**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY L. GRUBB,** *et al.*, | : | Case No. 2:14-CV-01587 |
| | : | |
| **Plaintiffs,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **v.** | : | **Magistrate Judge Kemp** |
| | : | |
| **DAY TO DAY LOGISTICS, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I.     INTRODUCTION

This matter comes before the Court on the following motions: (1) the motion of Defendant Day to Day Logistics, Inc. ("Day to Day") to Dismiss for Lack of Jurisdiction, or, in the Alternative, to Transfer Venue to the Western District of Virginia, (Doc. 12); (2) The motion of Day to Day to Dismiss the Cross Claim, or in the Alternative Transfer Venue to the Western District of Virginia, (Doc. 18); (3) The motion of Defendant Schneider National Carriers, Inc. ("Schneider") to Transfer Venue to the Western District of Virginia, (Doc. 20). For the reasons set forth herein, this Court declines to dismiss either the complaint or the cross claim on the basis of lack of personal jurisdiction, and declines to transfer venue. This Court concludes, however, that Virginia law applies to this case, and that under Virginia law, Plaintiffs' claims for negligent supervision and training are dismissed.

### II.     BACKGROUND

#### A.     Factual Background

Plaintiffs Timothy Grubb, administrator of the estate of Danny H. Grubb, deceased, and Darlene K. Grubb (collectively "Plaintiffs"), both citizens of Ohio, filed suit against Day to Day

and Schneider to recover wrongful death and survival damages related to the death of Dan Grubb, and personal injury damages, including negligent infliction of emotional distress, sustained by Darlene Grubb as a result of a September 21, 2013 motor vehicle accident in Virginia. Day to Day is a Canadian general freight motor carrier company organized under the laws of Ontario, Canada. The Plaintiffs allege that Day to Day's driver, Jaswant Singh, was operating his truck negligently at the time of the accident. Schneider is a general freight motor carrier for hire, headquartered in Wisconsin, which is also its principal place of business. The Plaintiffs allege that Schneider's driver, Carlisle N. Sinclair, Jr., was operating his truck negligently at the time of the accident. Neither Mr. Singh nor Mr. Sinclair is domiciled in Virginia.

The September 21, 2013 accident occurred on Interstate I-77 near Fancy Gap, Virginia. At the time of the accident, Dan and Darlene, husband and wife, were moving Dan's aunt, Marguerite Bartlett, from North Carolina to Ohio to live with them. Dan was driving, Darlene was in the front passenger seat and Marguerite was directly behind Darlene in the back seat. Soon after crossing the North Caroline state line into Virginia, they ascended the mountain peak at Fancy Gap, and they encountered a thick fog. Plaintiffs allege that Dan slowed to a crawl, but ahead, the speeding Day to Day driver, Jaswant Singh, slammed into the rear of Defendant Schneider's tractor-trailer, which had slowed in traffic, causing the tractor-trailer to jackknife across the northbound lanes. Grubb's car then struck the side of Schneider's trailer. Dan died on the scene of the accident, while Darlene suffered injuries. Darlene received emergency medical treatment at a hospital in North Carolina. When she was able to travel, she returned to her home in Athens, Ohio to continue treatment. While some of her medical records are in the North Carolina hospital, the majority of her treating physicians and medical providers are in Ohio,

where she continues to undergo most of her medical care. All of her treating physicians are in Ohio and in this District. Marguerite currently is domiciled in Ohio.

Some potential witnesses to the accident are not Virginia residents, including a tractor-trailer driver who is a resident of North Carolina, and a vehicle driver who is a resident of Florida. Other potential witnesses are residents of Virginia, including the investigating police officers, EMS personnel and the tow truck operators.

Day to Day attached to its motion an affidavit from its Manager of Operations, who testifies that Day to Day has been operating in Ohio since September of 2011. In the last nine months, however, Day to Day has not conducted any operations in Ohio. Further, Prior to March 2014, only two to three percent of Day to Day's total business revenue was generated from its operations in Ohio. Day to Day has only one customer, TQL, who is physically located in Ohio, but Day to Day does not transport freight to or from Ohio on TQL's behalf. At the time of the accident, Day to Day was not transporting any freight for TQL. Lastly, pursuant to the Federal Motor Carrier Act, Day to Day has designated an agent in Ohio for service of process purposes, as, on occasion, Day to Day's vehicles drive through Ohio on their way to other destinations.

### B. Procedural Background

Plaintiffs filed their Complaint on September 16, 2014, asserting claims against both Defendants for negligence, respondeat superior, negligence per se, negligent hiring, training, supervision, retention and entrustment, and punitive damages. (Doc. 1). On the same day, Plaintiffs filed a Notice of Related Case, *Parrot v. Schneider*, 14-CV-01462, in which the Plaintiff is another Ohio-resident driver injured in the September 21, 2013 accident, and is suing the same two defendants in this case. (Doc. 5).

On November 14, 2014, Day to Day filed a Motion to Dismiss for Lack of Jurisdiction, or, in the Alternative, to Transfer Venue to the Western District of Virginia. (Doc. 12). On November 17, 2014, Schneider asserted a cross-claim against Day to Day to recover the costs expended to repair damage that Schneider's tractor-trailer sustained as a result of the September 21, 2013 accident. (Doc. 16). On November 21, 2014, Day to Day filed a motion to Dismiss Schneider's Cross Claim for Lack of Jurisdiction, or in the Alternative Transfer Venue to the Western District of Virginia. (Doc. 18). Finally, on November 26, 2014, Schneider filed a Motion to Transfer Venue to the Western District of Virginia. (Doc. 20). All three matters have been fully briefed, and are ripe for review.

### III.   ANALYSIS

#### A.   Day to Day's Motion to Dismiss the Complaint and Cross Claim

Day to Day moves this Court to dismiss this case for lack of personal jurisdiction. In their Complaint, Plaintiffs state that the Defendants are subject to the Court's personal jurisdiction pursuant to the Federal Motor Carriers Act ("FMCA"), 49 U.S.C. §13304, under which Day to Day designated and registered an agent for service of process in Ohio. The argument is that designation of agent under that provision gives the District Court jurisdiction by consent. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.").

Day to Day argues that it did not consent to personal jurisdiction in Ohio by designating an agent for service of process in the state pursuant to the FMCA. In addition, Day to Day contends that it does not have sufficient contacts with the State of Ohio to warrant suit being

4

filed here, nor did the accident arise out of any business which Day to Day was doing in Ohio. Should this Court determine it has jurisdiction over the case, however, Day to Day asserts that Virginia law controls, and that a number of Plaintiffs' causes of actions should be dismissed with prejudice, as they are not recognized under Virginia law.

**1.      Whether Dismissal is Warranted Based on Lack of Personal Jurisdiction**

The Court first will address whether Day to Day has consented to jurisdiction by designating an agent for process pursuant to 49 U.S.C. § 13304(a) of the FMCA, rendering any "minimum contacts" analysis unnecessary. 49 U.S.C. § 13304(a) states, in pertinent part:

> A motor carrier or broker providing transportation ... shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker.

49 U.S.C. § 13304(a). The Sixth Circuit has twice upheld personal jurisdiction in relation to an automobile accident that occurred outside of the state when service was made upon an agent in the state of filing designated pursuant to 49 U.S.C. § 13304(a) or its predecessor. *See Shapiro v. Southeastern Greyhound Lines,* 155 F.2d 135 (6th Cir.1946); *Scott v. Se. Greyhound Lines*, 5 F.R.D. 11, 12-14 (N.D. Ohio 1945). In *Shapiro*, the Sixth Circuit found that a Kentucky defendant consented to a suit filed in Ohio by an Illinois resident, for an accident that took place in Georgia, because the defendant designated an agent in Ohio pursuant to the FMCA. 155 F.2d at 136. When injured, the plaintiff was on a bus line from Florida to Ohio. *Id*. The *Shapiro* Court held broadly that service upon an agent designated pursuant to a federal statute constitutes consent to be sued in diversity. *Id*. Against the defendant's objections, the *Shapiro* Court found that the carrier did in fact engage in interstate commerce in Ohio, as it had a terminal there, but clarified that the "quantum of the service [was] not material" to its interstate commerce determination. *Id*. at 137.

5

Day to Day argues that *Shapiro* is distinguishable because the defendant had a more substantial presence in Ohio than Day to Day has in this case. This Court finds that the decision in *Shapiro* principally was based on the broad holding that service upon an agent designated pursuant to a federal statute—in that case the FMCA—constitutes consent to be sued in diversity. Since such a holding did not rest on an analysis of the Defendant's contacts in Ohio, Day to Day's argument is not persuasive.

In *Scott v. Se. Greyhound Lines*, an Ohio resident brought suit in Ohio for a car accident that took place in Kentucky. The defendant argued that it was not subject to service of process in Ohio because the cause of action arose in Kentucky. *Scott*, 5 F.R.D. at 12. Further, the defendant argued that § 321(c) of the FMCA, predecessor to § 13304(a), could not confer jurisdiction because that section required that the Court have jurisdiction over the subject matter, which it argued the Court did not because the accident did not take place in Ohio. The Court disagreed with the defendant, and found, instead, that it had subject matter jurisdiction over a personal injury suit over which it had personal jurisdiction, and that the FMCA is broad enough to authorize service against an interstate carrier in any type of action. The Court cited to a New Jersey case for support, which held that "the designation of an agent under the Motor Carrier Act operated as a waiver of the privilege accorded the defendant under Sec. 51 of the Judicial Code, 28 U.S.C.A. § 112, and a consent to be sued in each of the States in which the required designation is filed." *Id*. at 13 (citing *Wynne v. Queen City Coach Co.*, D. C., 49 F.Supp. 103).

Day to Day argues that *Scott* is distinguishable because the *Scott* Court never explicitly held that it could exercise jurisdiction over the defendant because it had designated an agent for service of process pursuant to FMCA. While the *Scott* Court did not reiterate and apply explicitly the holding in *Wynne*, a fair reading of the Court's rationale makes clear that it upheld personal

jurisdiction over the defendant based only on 49 U.S.C. § 13304(a); no other grounds but the rationale in *Wynne* existed in the opinion, and the *Scott* Court explicitly relied on *Wynne*. Thus, this Court is convinced that *Scott* provides additional support for the holding that under the law of this Circuit, the designation of an agent under the FMCA operates as consent to be sued in each of the states in which the required designation is filed.

Finally, Defendant argues that the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) undermines the holdings in *Scott* and *Shapiro*. This is not so. *Daimler* limited general jurisdiction over a corporation to the corporation's principal place of business and its place of incorporation. *Id*. at 641. *Shapiro* and *Scott* depend, in contrast, on a principle unaffected by *Daimler*: that a person or corporation can directly or indirectly consent to personal jurisdiction, thus obviating the need for a court to undergo a specific or general personal jurisdiction analysis. In sum, while *Shapiro* and *Scott* admittedly are dated, they both remain good law, and are not distinguishable for the purposes of this case.

Additionally, other federal courts have found in more recent years that designation of an in-state agent pursuant 49 U.S.C. § 13304(a) gives the court personal jurisdiction based on a theory of consent, regardless of any minimum contacts analysis. Most notable is *Ocepek v. Corporate Transp., Inc.*, in which the Eight Circuit relied, in part, on *Shapiro v. Southeastern Greyhound Lines* to hold that interstate carriers, having designated in-state agents for service of process pursuant to the FMCA, could not limit their consent to suit for automobile accident cases to those causes of action that arose within the state. 950 F.2d 556, 557-61 (8th Cir. 1991). In *Ocepek*, the plaintiff was a resident of Missouri, hurt in a car accident in Ohio, and the defendant was incorporated in New York. The Court noted that numerous state and federal courts had regularly upheld personal jurisdiction when service is made upon an agent designated pursuant to

the FMCA. *Id*. at 559 (citing *Shapiro v. Southeastern Greyhound Lines,* 155 F.2d 135 (6th

Cir.1946), *Mullinax v. McNabb–Wadsworth Truck Co.,* 117 F.R.D. 694 (N.D.Ga.1987),

*Sansbury v. Schwartz,* 41 F.Supp. 302 (D.D.C.1941), *Hirsch v. National Van Lines, Inc.,* 136

Ariz. 304, 666 P.2d 49 (1983), and *Mittelstadt v. Rouzer,* 213 Neb. 178, 328 N.W.2d 467

(1982)).

The *Ocepek* Court interpreted the FMCA, and reasoned that neither the language of the

statute, the regulations adopted by the Interstate Commerce Commission ("ICC") in

implementing the statute, nor the standard form that motor carriers must file with the ICC in

order to be in compliance with the FMCA, limited designation. *Id*. at 559-60. The statute simply

states that an interstate motor carrier "shall designate an agent in each State in which it operates

... on whom process issued by a court with subject matter jurisdiction may be served *in an*

*action* brought against that carrier...." 49 U.S.C. § 10330(b) (emphasis added). Further, it found

that the statute contains no language limiting "action" to those actions arising within the

state. *Id.* at 559. The Court concluded that such unlimited designation was consistent with the

"broad remedial purposes of the Act:" to protect the public from accidents growing out of the

negligent use of motor vehicles engaged in interstate transportation:

> [i]n today's society, many people rely on trucks and trucking companies to
> transport goods to various locations throughout the country. These trucks
> necessarily cross many states. As the volume of highway traffic increases, so does
> the risk of an injury resulting from an accident involving one of these carriers.
> The obvious purpose of the federal statute is to eliminate potential jurisdictional
> problems and to provide injured parties with reasonably easy access to the courts,
> having in mind that the injured party is frequently a resident of some state other
> than that in which the accident has occurred.
>
> The present action is a good illustration. Mr. Ocepek lives in Missouri. He
> returned there after the accident. It is obviously the most convenient place for him
> to bring suit. Corporate Transport is a New York corporation. The accident
> occurred in Ohio. Neither of these states is a very convenient forum for an injured
> plaintiff from Missouri, let alone an injured plaintiff from Alaska, California, or

Hawaii. Corporate Transport, on the other hand, does business in Missouri. Missouri is not so inconvenient for it, as Ohio or New York would be for the plaintiff. Indeed, Missouri may be no more inconvenient for the defendant than Ohio would be, and no one doubts that the action could properly be brought in Ohio. The assumption of the statute is that companies which do business nationwide can more easily defend themselves in any of those states in which they do business, than individual citizens can bring suit outside their home states, perhaps at great distances. The most logical reading of the statute, therefore, and the one which advances its general purpose, is to interpret it as requiring an unrestricted designation of an agent for service of process in each jurisdiction where the interstate carrier does business.

*Id.* 560-61.

This Court follows *Ocepek*, and the other district courts which have adopted its rationale. *See, e.g., Falzon v. Johnson*, No. 12 CV 0674 ILG, 2012 WL 4801558, at *1-4 (E.D.N.Y. Sept. 11, 2012) *report and recommendation adopted,* No. 12 CV 674 ILG CLP, 2012 WL 4798670 (E.D.N.Y. Oct. 9, 2012) (following *Ocepek*); *R.R. Donnelley & Sons Co. v. Jet Messenger Servs., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *3-4 (N.D. Ill. May 25, 2004) (same); *Rounds v. Rea*, 947 F. Supp. 78, 82-84 (W.D.N.Y. 1996) (same). Just as in *Ocepek*, the state of Virginia is not a very convenient forum for either party. This Court agrees that the assumption of the statute is that motor carrier companies which do business nationwide can defend themselves more easily in any of those states in which they do business, than individual citizens can bring suit outside their home states. While it has yet to be shown how substantial Day to Day's business contacts are in Ohio, they concede that they do or have done business in that state, and that their drivers operate throughout Ohio. Thus, this Court holds that both the language and the remedial purpose of the FMCA indicate that by designating an in-state agent for service of process pursuant to the FMCA, Day to Day consents to suit in.

Notably, no other appellate courts have spoken on this precise issue of whether unlimited designation of an agent in a state pursuant to 49 U.S.C. § 13304(a) or its predecessors is

sufficient to confer personal jurisdiction upon the district dourt related to an automobile accident that occurred in another state; a number of district courts have declined to follow *Ocepek*, however. *See, e.g., Davis v. Quality Carriers, Inc.*, No. CIV.A. 08-4533 (SRC), 2009 WL 1291985, at *2-6 (D.N.J. May 7, 2009) (following *Landreville*); *Landreville v. Joe Brown Co.*, No. CIV.A. 06-5568, 2008 WL 910009, at *2-5 (E.D. Pa. Apr. 2, 2008) (reasoning that finding consent based on a blanket designation under the FMVA without considering actual contact with a state would invite nationwide forum shopping and leave Defendant with no protection against being hailed into unfavorable or distant fora ... The Motor Carrier Act is silent as to what effect, if any, Defendant's designation of an agent, standing alone, has on personal jurisdiction)*; Paz v. Castellini Co.,* 2007 U.S. Dist. LEXIS 83028, at *21, 2007 WL 3342214 (S.D. Tex. Nov. 8, 2007) ("To hold that a [defendant's designation of an agent pursuant to the Motor Carrier Act] would be sufficient for it to be dragged into Texas courts grates against notions of fair play and substantial justice inherent in the concept of personal jurisdiction."); *Tyler v. Gaines Motor Lines, Inc.,* 245 F.Supp.2d 730, 732 (D. Md. 2003) (finding designation of an agent for service of process pursuant to 49 U.S.C. § 13304(a) does not provide the 'consent' of the corporation to be sued for a matter unrelated to its contacts with the state); *Lyons v. Swift Transp. Co.,* 2001 WL 1153001, 2001 U.S. Dist. LEXIS 15585, at *23 (E.D. La. Sept. 26, 2001) (same); *see also Maroshek v. E. Penn Trucking Co.,* 1992 U.S. Dist. LEXIS 6203, at *4, 1992 WL 101621 (D.D.C. Apr. 28, 1992) (finding unpersuasive that designation of service of process amounted to consent to personal jurisdiction where there was no a "continuing corporate presence" to satisfy the requirement of "doing business" under the District of Columbia long-arm statute).

Defendant urges this court to follow the Fourth, Fifth, and Eleventh Circuits, which have declined under circumstances unrelated to the FMCA to find jurisdiction over a corporate

10

defendant based solely on its registration of an agent in that state. *See Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir.2000) (rejecting "the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation" in any matter where agent was appointed in connection with certain business unrelated to the suit); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992) (same as applied to designation of an agent pursuant to a Texas statute regulating foreign corporations authorized to do business in Texas); *Ratliff v. Cooper Lab., Inc.,* 444 F.2d 745, 748 (4th Cir.1971) (noting "the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context"). First, those cases are in tension with this Circuit's holding in *Shapiro*. Second, those cases are distinguishable. They address, generally, whether a corporation consents to jurisdiction in a state, on any matter, simply by appointing an agent for service of process in that state. In contrast, this case addresses the discrete question of whether the language and remedial purpose of the FMCA lead to the conclusion that a motor carrier who is engaged in interstate commerce, and who designates an in-state agent of process pursuant to the FMCA, consents to be sued in that state for automobile accidents which did not occur in that state. Though this court can forgo a minimum contacts analysis pursuant to *Shapiro* and *Ocepek*, the Plaintiff, presumably, may have a valid reason why venue is appropriate in the state of its choosing, which is other than the one in which the accident occurred. As it has already done in this case, a defendant is free to file a motion to transfer venue if it believes venue is inappropriate in the state in which the plaintiff filed.

    In sum, this Court is bound by *Shapiro*, which held that service upon an agent designated pursuant to a federal statute—in that case the FMCA—constitutes consent to be sued in diversity for an automobile accident that occurred out of state. Further, this Court adopts *Ocepek's*

interpretation of the language and remedial purpose of the FMCA, to support the holding FMCA does not limit an action for which the designated state agent can be served to those that occurred within the state. Accordingly, by designating an agent for service of process in Ohio, Day to Day consented to be sued in diversity in Ohio for the automobile accident in Virginia. Thus, this Court has personal jurisdiction over Day to Day and need not address Day to Day's other arguments pertaining to personal jurisdiction. Accordingly, Day to Day's Motion to Dismiss the Complaint and Counter Claim for lack of personal jurisdiction is **DENIED**. (Docs. 12, 18).

### 2. Choice of Law

Defendant argues that the law of Virginia applies because Virginia is the place where the accident occurred. Plaintiff argues that this Court is permitted to and should apply Ohio law. This Court agrees that Virginia law should apply.

### a. Standard

Federal courts siting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elc Mfg. Co*. 313 U.S. 487, 496 (1941). Therefore, this Court applies Ohio's choice-of-law rules. In Ohio, tort actions "traditionally relied upon *lex loci delicti,* the place where the tort occurs, in determining the law to be applied in actions requiring the court to decide on the choice of law." *Muncie Power Products, Inc. v. United Technologies Auto., Inc.*, 328 F.3d 870, 873-78 (6th Cir. 2003). In *Morgan v. Biro Manufacturing*, however, the Ohio Supreme Court held that while *lex loci delicti* would still be available in Ohio, that rule no longer would be "used to automatically determine the prevailing state law." 15 Ohio St.3d 339, 342, 474 N.E.2d 286 (1984). Instead, *Morgan* found that "other interests of the states involved within the controversy must be thoroughly analyzed;" accordingly, it adopted the balancing test set forth

in the Restatement (Second) Of Conflict Of Laws, beginning with section 146, to determine which state's law to apply in a tort action. *Id*. at 341-42.

Restatement (Second) Of Conflict Of Laws § 146 (1971) governs personal injuries and states that:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Thus, in Ohio, "a party may overcome the presumption that the law of the place where the injury occurs will be applied to a tort action, if it can demonstrate that another state has a more significant relationship to the action." *Muncie*, 328 F.3d at 874. In *Muncie*, the Court embraced the Restatement (Second) Conflict of Laws regarding choice-of-law determinations in the context of a tort action:

> Section 145 of the Restatement, which governs torts generally, sets forth the analysis to be undertaken by courts in a tort action in determining whether another state has a "more significant relationship." This section directs courts to consider four factors and states in relevant part:
>
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).
>
> Section 6 provides further guidance for analysis under the Restatement and describes several general principles to be considered when conducting a choice-of-law analysis. These principles include: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).
>
> Furthermore, section 173 of the Restatement, which governs contribution and indemnity among tortfeasors, provides that "[t]he law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

*Muncie*, 328 F.3d at 874. Although this case involves both a wrongful death action and a personal injury action, this Court's choice-of-law analysis applies equally to both because Restatement § 146, which governs personal injuries, and Restatement Laws § 175[1], which governs wrongful death actions, contain "virtually identical" language and rationales. *Bowman v. Koch Transfer Co.*, 862 F.2d 1257, 1260 (6th Cir. 1988) (finding no harm in a wrongful death suit resulting from the district court relying on *Morgan*, which addressed the choice-of-law standard for a personal injury action).

### b.  Application of Ohio's Choice-of-Law Rule to Plaintiff's Claim

In applying the four factors set forth in § 145 of the Restatement and the general principles governing choice-of-law considerations as set forth in § 6 of the Restatement, we find that Virginia has the most significant relationship to this personal injury action and its law should

---

[1] Restatement § 175 states: "In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

apply. In terms of the first two factors, Virginia is the place where the injury occurred, and the place where the conduct causing the injury occurred. Ohio courts have noted that "Comment *d* to Section 146 emphasizes that the state in which both the conduct and the injury occur has the dominant interest in regulating that conduct, determining whether it is tortious in character, and determining whether the interest is entitled to legal protection." *Kurent v. Farmers Ins. of Columbus*, 62 Ohio St. 3d 242, 246, 581 N.E.2d 533, 537 (1991); *Amon v. Grange Mut. Cas. Co.*, 112 Ohio App. 3d 407, 410-11, 678 N.E.2d 1002, 1004-05 (1996). Thus, the first two factors weigh in favor of applying Virginia law.

In terms of the fourth factor, Ohio courts have found that in the context of a tort action, the place where the tortious conduct occurred is the place where the relationship, if any, between the parties centered. *Amon*, 112 Ohio App. 3d at 410-11(finding that in an action brought by an Ohio insured for an accident that occurred in Louisiana, "[t]he fourth factor [under section 145] supports application of Louisiana law because Louisiana is the place where the relationship, if any, between appellee and the tortfeasor is located").

Finally, the third factor presents a closer call. In *Bowman v. Zackaroff*, the Sixth Circuit held that Illinois law, and not Ohio, should be applied in the context of an automobile accident that occurred in Illinois, where the decedent was domiciled in Ohio, but her children had not lived in Ohio in the one and one-half year preceding her death, and defendants were domiciled in Illinois.  862 F.2d 1257, 1260–62 (6th Cir.1988) (undertaking a Restatement analysis). Similarly, in *Cincinnati Ins. Co. v. Leeper*, the Ohio Court of Appeals applied § 145 of the Restatement and found that where the plaintiff was an Ohio resident riding in a vehicle owned and operated by a Michigan resident, and the appellee driver was an Ohio resident whose insurance company was licensed to do business in Ohio, such factors did not rise to a level significant enough to

overcome the presumption that the law of the place where the injury occurred (Michigan) controls. No. L-97-1265, 1998 WL 123108, at *2 (Ohio Ct. App. Mar. 13, 1998).

In contrast, in *Voelzke v. Fowler*, the Ohio Court of Appeals held that "when all of the individuals involved in an accident are domiciled in one state (Ohio), but the accident occurred in another (Michigan), the state where all the individuals involved in the accident are domiciled has the more significant relationship to the lawsuit and, thus, overcomes the presumption that the law of the place where the injury occurred controls." 2003-Ohio-1419, 2003 WL 1467225 (Ohio Ct. App. 6th Dist. Williams County 2003) (finding facts identical to *Callis v. Zilba* (2000), 136 Ohio App.3d 696, 737 N.E.2d 974).

The case *sub judice* is not identical to *Bowman* and *Cincinnati*, or to *Voelzke and Callis*. In this case, the Plaintiffs are domiciled in Ohio, but the Defendants are not domiciled in the state where the tort occurred or in the same state as the Plaintiffs. This Court concludes, however, that in a tort action arising from an out-of-state automobile accident, where the parties invariably will have no prior relationship, it will be rare that § 145's domicile factor, alone, will overcome the presumption that the law of the place of injury controls. Thus, *Callis* and *Voelzke* constitute the rare circumstance in which the domicile factor weighs against the other three § 145 factors: when all drivers and all parties are domiciled in Ohio, which is other than the state in which the automobile accident occurred. In contrast, in *Cincinnati*, the Defendant and Plaintiff were both domiciled in Ohio; the only Michigan resident was the person driving the car in which the Plaintiff was riding at the time of the accident. Nonetheless, the *Cincinnati* Court found that the other Section 145 factors weighed in favor of applying Michigan law. The *Cincinnati* Court depended heavily on the Ohio Supreme Court's rationale in *Kurent*:

> A motorist traveling in Michigan accepts Michigan law as it pertains to accidents occurring in Michigan. That motorist does not have the option, for example, of

16

> claiming that Ohio's speed limit or traffic laws govern simply because the motorist resides in Ohio. The notion that Ohio law somehow controls the amount of damages flowing from torts committed on Michigan highways is akin to a contention that a Michigan resident who commits murder in Ohio is exempt from the death penalty because Michigan does not recognize capital punishment.

*Cincinnati*, 1998 WL 123108, at *2-3 (citing *Kurent*, 62 Ohio St.3d at 246). Thus, as this case does not present the rare circumstances in which all parties and drivers are domiciled in Ohio, which is other than the state in which the accident occurred, this Court finds that Ohio does not have a "more significant relationship" to the issues in this case than the state in which the automobile accident occurred, Virginia. Accordingly, this Court will apply Virginia law to this case.

### 3.    Motion to Dismiss Claims under Virginia Law

Day to Day argues that Plaintiffs' following claims should be dismissed because they are not recognized as independent causes of action under Virginia law: (1) respondeat superior, (2) negligent training, (3) negligent supervision, based on the factual circumstances alleged in the complaint.

### a.  Respondeat Superior

This Court finds that Plaintiffs properly raise a claim of liability against the Defendant employers for the willful and wrongful acts of their employees under the doctrine of respondeat superior. It is true that under Virginia law, respondeat superior is not a doctrine of primary liability, but instead is a doctrine or theory of liability under which an employer is vicariously liable for an employee's tortious acts committed with the scope of employment. *Interim Pers. of Cent. Virginia, Inc. v. Messer*, 263 Va. 435, 441, 559 S.E.2d 704, 707 (2002). It is distinct, for instance, from the tort of negligent hiring, in which the employer is "principally liable." *Id*.

Nonetheless, the Virginia Supreme Court continuously has recognized a separate claim or cause of action against employers under the doctrine of respondeat superior, based on an employee's underlying tortious conduct, often even when the employee who allegedly committed the underlying negligent act is not named in the lawsuit. *See, e.g., Doud v. Com.*, 282 Va. 317, 320, 717 S.E.2d 124, 125 (2011) (noting that "plaintiff's theory of recovery against the Commonwealth was based entirely on *respondeat superior,* in that the sheriff and his deputies and jailors 'acted under the authority of and on behalf of ... the Commonwealth of Virginia;" the case was dismissed subsequently on sovereign immunity grounds); *Kopalchick v. Catholic Diocese of Richmond*, 274 Va. 332, 335, 645 S.E.2d 439, 440 (2007) (analyzing whether the accrual date of the statute of limitations for personal injury resulting from sexual abuse under Virginia law applied to the case, in which "damages against the diocese was based upon theories of *respondeat superior*," and the alleged perpetrators of the abuse were not defendants in the suit); *Gina Chin & Associates, Inc. v. First Union Bank*, 260 Va. 533, 540, 537 S.E.2d 573, 576 (2000) (reviewing plaintiff's "assertion of [employer's] liability based upon the doctrine of respondeat superior" in case where plaintiff sued bank under theory of vicarious liability for the criminal acts of its employee, but the employee was not sued directly for those underlying acts); *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 525, 539 S.E.2d 426, 428 (2000) (referring to *Gina Chin* and noting that "we have discussed in detail the necessary elements of a cause of action for liability against an employer for the willful and wrongful acts of its employee premised upon the doctrine of respondeat superior," and applying those elements to the case); *Plummer v. Center Psychiatrists, Ltd.,* 252 Va. 233, 476 S.E.2d 172 (1996) (holding that an allegation that the employee, a therapist, had engaged in an improper sexual relationship with a

patient stated a cause of action against his employer under the doctrine of respondeat superior; plaintiff brought no underlying tort claim against employee).

It is true that a number of Virginia Circuit Courts recently have stated that respondeat superior is a theory of liability only, and not a distinct cause of action. *See*, *e.g.*, *Shaver v. HPB Corp.*, 84 Va. Cir. 382 (2012) (finding respondeat superior is a theory of liability and not a separate cause of action for the purposes of statute of limitations); *Rohrbaugh v. Kreidler,* 71 Va. Cir. 298, 304, 2006 Va. Cir. LEXIS 245, at *14 (Cir. Ct. of Arlington Cty.2006) ("*respondeat superior* is a theory of liability, not a separate cause of action"); *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 751 (E.D. Va. 2001) (reasoning that "one cannot bring a claim of 'respondeat superior,' instead one simply relies on this theory as a vehicle for imposing on the principal liability for the underlying wrongful acts of the agent"). *Rohrbaugh* and *Newport* do not cite to any sources for their proposition that one cannot bring an independent claim for liability under a theory of respondeat superior. *Shaver* relies on *Rohrbaugh* and *Newport*. None of those cases reconciles the above Virginia Supreme Court precedent.

As explained *supra*, while the Virginia Supreme Court case law is clear that respondeat superior is a doctrine of vicarious and not primary liability, it is also clear that one can bring an independent claim for liability against an employer under the doctrine of respondeat superior, even when the allegedly negligent employees are not named. Thus, this Court declines to dismiss Plaintiffs' claim for liability under a theory of respondeat superior.

### b.  Negligent Training and Supervision

Day to Day argues that Virginia case law does not support Plaintiffs' negligent training cause of action, relying entirely on *Garcia v. B & J Trucking, Inc.,* 80 Va. Cir. 633 (Sussex County 2010). Further, Day to Day contends that Virginia generally does not recognize a cause

19

of action for negligent supervision, citing *Lockney v. Vroom*, 61 Va. Cir. 359 (Va. Cir. 2003) and

*Garcia*, and that whether and to what extent a plaintiff can proceed under that theory depends on

the facts of the case, citing *Hernandez v. Lowe's Home Centers, Inc.,* 83 Va.Cir. 210, 2011 WL

8964944 (Va.Cir.Ct.2011). Defendant does not contend Virginia law fails to recognize claims for

negligent hiring, retention, or entrustment, also causes of action which Plaintiffs assert.

In *Cook v. John Hancock Life Ins. Co. (U.S.A)*, the district court reviewed Virginia law as

it pertained to negligent supervision. No. 7:12-CV-00455, 2015 WL 178108, at *13 (W.D. Va.

Jan. 14, 2015). It noted that *Chesapeake Potomac Tel. Co. v. Dowdy,* 235 Va. 55, 56 (1988), had

been often relied upon for the proposition that Virginia does not recognize a tort of negligent

supervision. *Id*. (citing *Hernandez v. Lowe's Home Ctrs., Inc.,* 83 Va. Cir. 210, 2011 WL

8964944, at *2 (Norfolk Aug. 1, 2011) (listing a number of Virginia circuit court decisions that

relied on *Dowdy* to dismiss negligent supervision claims)); *see also Morgan v. Wal–Mart Stores*

*E., LP,* 2010 WL 4394096, at *4–5 (E .D.Va. Nov. 1, 2010); *Thompson v. Town of Front Royal,*

117 F.Supp.2d 522, 531 (W.D.Va.2000). The *Cook* Court noted, however, that a number of

Virginia circuit courts had interpreted *Dowdy's* holding more narrowly, "and have allowed a

negligent supervision claim to proceed, at least past the demurrer stage." *Id*. (citing *Hernandez,*

2011 WL 8964944, at *3 (listing cases)).

The *Cook* Court explained that a number of federal courts in Virginia had followed

*Hernandez*, which concluded that some cases improperly had interpreted *Dowdy* to mean that no

cause of action for negligent supervision existed under any circumstance, when *Dowdy* merely

held that no duty existed under the facts of that case. *Id*. (citing *Parker v. Wendy's Int'l, Inc.,* ——

F.Supp.2d ——, 2014 WL 4202490, at *4 (E.D.Va. Aug. 22, 2014) (recognizing the split of

authority in Virginia trial courts but declining to determine "whether a claim of negligent

20

supervision would ever be cognizable under Virginia law" because the plaintiff before it had failed to plead facts supporting such a claim), and *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.,* 16 F.Supp.3d 636, 664 (W.D.Va.2014) (discussing *Hernandez* and the authority cited therein in context of insurance coverage dispute where court did not have to decide the issue of whether Virginia would recognize such a claim)). The *Hernandez* Court held, therefore, that "[t]he Supreme Court of Virginia has not yet recognized a cause of action for negligent supervision or for negligent training. Nor has it completely ruled out such a cause of action under Virginia law." *Hernandez*, 2011 WL 8964944 at *5. The *Cook* court concluded that "[i]n light of the limited holding in *Dowdy* and the more recent authority such as *Hernandez,* the court is uncertain whether Virginia would recognize such a tort in an appropriate case." 2015 WL 178108, at *14. It held, nonetheless, that no such claim was pled adequately because plaintiffs pointed to no case in which a negligent supervision claim was applied in the context of an independent contractor relationship. *Id.*

Plaintiffs depend on *Hernandez v. Lowe's Home Centers, Inc.*, and Day to Day does not dispute *Hernandez's* rationale in narrowing the holding in *Dowdy* to find that a cause of action for negligent supervision may exist under some circumstances.[2] Instead, Day to Day argues that

---

[2] The *Hernandez* Court explained *Dowdy* as follows:

> In *Chesapeake Potomac Tel. Co. v. Dowdy,* 235 Va. 55, 56 (1988), the Court asked "whether the common law of Virginia recognizes a tort of negligent supervision of an employee by the employer and its managerial personnel." In *Dowdy,* the plaintiff employee sought recovery for "negligent supervision resulting in aggravation of physical and mental suffering." *Id.* at 57. Dowdy suffered from "irritated bowel syndrome," which he contended worsened as a result of stress imposed upon him by the company and by his immediate supervisors. He argued the company was trying to "get rid of him," and while it was making a case to terminate his employment, Dowdy's condition worsened from the stress of trying to save his career. The trial court instructed the jury on negligent supervision:
>
> > The court charged the jury that "defendants were under a duty to exercise reasonable care under all the circumstances then and there existing in their supervision of plaintiff." The court further told the jury that if "the defendants knew or in the exercise of reasonable care should have known that their conduct would result in stress that aggravated plaintiff's illness, but

even accepting that negligent supervision is a cognizable cause of action under Virginia law

under certain circumstances, the facts of this case do not support such a cause of action under

*Garcia v. B & J Trucking, Inc.,* 80 Va. Cir. 633 (Sussex County 2010).

In *Garcia*, the Court criticized the "truncated reading of *Dowdy*," finding that other

courts had frequently taken the holding in *Dowdy* out of its "full context," by omitting the

concluding words: "In Virginia, there is no duty of reasonable care imposed upon an employer in

the supervision of its employees *under these circumstances and we will not create one here*." *Id.*

at 635 (citing *Dowdy*, 235 Va. 55 at 61). While the Court in *Garcia* declined to "chart new law"

in the territory of negligent supervision, it ruled narrowly that, " '[u]nder these circumstances,'

---

> thereafter acted unreasonably in supervising plaintiff so as to aggravate his illness, then this
> constituted negligence." Finally, the court required the jury to find by clear and convincing
> evidence that any such negligence was the proximate cause of plaintiff's damages, if any.

> *2 *Id.* at 58. The Supreme Court disagreed with Dowdy's argument that because the defendants
> were on full notice that the stress they caused him was directly and adversely affecting his
> physical condition the jury should have been permitted to conclude it was unreasonable conduct
> on his employer's part. The Court held, "In Virginia, there is no duty of reasonable care imposed
> upon an employer in the supervision of its employees under these circumstances and we will not
> create one here." *Id.* at 61. (Emphasis added.).

2011 WL 8964944 at *2. *Hernandez* acknowledged that, a number of Virginia circuit courts have relied on
*Dowdy* to hold that negligent supervision was not a cognizable tort under Virginia law. *Id.* (listing of cases
which relied on *Dowdy* to find negligent supervision is not recognized as a cause of action under Virginia
law.) *Hernandez* agreed, however, that those cases were not binding on the court, and also that those cases
had improperly interpreted *Dowdy* to mean no cause of action for negligent supervision existed under any
circumstance, when *Dowdy* merely held that no duty existed under those circumstances. *Id.* at *3. The
*Hernandez* Court further distinguished *Dowdy* and its progeny:

> The Court agrees that the circumstances in *Dowdy* are distinguishable from those at hand. First, in
> *Dowdy,* the claim was the employer and the plaintiff's supervisors negligently supervised the
> *plaintiff. Dowdy* did not address whether an employer can be held liable to a *third party* for
> negligent supervision of an employee. Here, the claim is that Lowe's failed to supervise an
> employee engaged in dangerous activity such that it harmed a third party invitee—not the
> employee himself. Furthermore, it may be argued that the Court in *Dowdy* was really declining to
> carve out an exception to the tactile tort rule for recovery for emotional distress. *Dowdy* was
> attempting to recover for negligent infliction of emotional distress under a theory that his
> employer had a duty to supervise him. There the Court found that the conduct was not so wrongful
> or egregious to allow Dowdy to recover for emotional distress resulting from a non-tactile tort
> where no physical contact was made by the defendant. Here, Hernandez is suing over a tactile
> injury to her person.

*Id.*

22

an employer could not possibly supervise an employee while he operates a tractor trailer along the highway." *Id.* The *Hernandez* Court reasoned that the ruling in *Garcia* "suggests that if it were *possible* for the employer to supervise the employee in *Garcia*," however, "the court would have found that a duty to do so existed." 2011 WL 8964944 at *3.

This Court agrees with *Hernandez's* analysis of Virginia law as it pertains to negligent supervision, and does not find it to be in conflict with *Garcia*. The question before this Court, therefore, is whether under *Garcia* the factual circumstances of this case are such that this Court should dismiss Plaintiffs' claim for negligent supervision. This Court finds that this case is factually identical to *Garcia*, as both involve negligent supervision and training claims resulting from a motor vehicle collision between civilian drivers and a tractor trailer. Plaintiffs' complaint alleges broadly that that the Defendants owed the public a duty to ensure their drivers "operated the vehicle … in a careful, safe and lawful manner, and that there was compliance with state and federal statutes and regulations." (Doc. 1). They also allege that the employers "negligently…permitting …that its drivers … be on duty and drive hours in excess of the legal maximum, or while impaired, ill, intoxicated, sleepy, inattentive, and/or while improperly licensed or under suspension." (*Id.*). Even assuming, *arguendo*, a claim for negligent supervision is cognizable under Virginia law, just as the Court concluded in *Garcia*, this Court similarly finds that an employer cannot possibly supervise an employee truck driver's intoxication level, manner in which he drives, or attentiveness, etc., while he operates a tractor trailer along the highway. That is not to say that if Day to Day were on notice, for whatever reason, that its driver was not law abiding or prudent, that it could not be found liable under a theory of negligent retention or hiring. Day to Day does not challenge, however, Plaintiffs' right to assert such

causes of action. Thus, Day to Day's motion to dismiss Plaintiffs' claims for negligent supervision is hereby **GRANTED**.

In terms of negligent training, the *Garcia* Court noted that the plaintiff's brief cited to only one case, *Sadler v. Lynch,* 192 Va. 344, 64 S.E.2d 664 (1951), to support the conclusion that Virginia recognized a claim for negligent training. 80 Va. Cir. at 634. While the *Garcia* Court found *Sadler* was not dispositive, it still interpreted *Sadler* to mean that "the employer's duty to train the employee runs only so far as the employee can be deemed reasonably unable to understand the risk that is involved with the employment." *Id*. Applying that rule to the facts of the case, the *Garcia* Court concluded that the driver was aware of the risks of his employment for two reasons: (1) "he drives trucks for a living and is aware of the environment in which his employment takes place," and (2) because he "is still of the age to be employed, it is positively safe to assume that automobiles have been in use throughout the entire course of his life and that he is thus aware of the risks inherent in the operation of an automobile." *Id*. The Court also looked to federal regulations regarding motor vehicle safety, which were adopted into the Virginia Code, to conclude that the only regulations regarding training for tractor trailer drivers is that they must have "proper [training] certification and licensure," which the employer must keep on file. *Id*. The *Garcia* Court noted that the regulations did not require the employer to provide the training himself. *Id*. Thus, it held that "it does not appear that there is a positive legal duty for an employer to train and instruct its employee," a conclusion strengthened by regulations governing tractor-trailers. *Id*. at 634-35.

The *Hernandez* Court interpreted *Garcia* and determined that "with respect to negligent training, *Garcia* suggests that such a cause of action may exist." 2011 WL 8964944 at *4. This interpretation is doubtful considering *Garcia's* ultimate holding with respect to negligent

training. Even under a liberal interpretation of *Garcia*, however, *Hernandez* concluded that a claim for negligent training "may require heightened pleading" because there may be no duty to train employees to watch out for "such obvious risks involved in his employment." *Id.* The *Hernandez* Court concluded that since the plaintiff in that case did not allege any "special need" to train the allegedly negligent employee, a claim for negligent training could not survive. *Id.*

Thus, even assuming, *arguendo*, that Virginia law recognizes a cause of action for negligent training, under both *Garcia* and *Hernandez*, Plaintiffs have not pled sufficiently a claim for negligent training. Plaintiffs have not alleged that Day to Day's driver was "reasonably unable to understand" the risks inherent in driving a tractor trailer in a mountain pass, nor have they alleged facts sufficient to show that the risks which led to the accident were not obvious, such that they required special training. Thus, Defendants motion to dismiss Plaintiffs' claims for negligent training is hereby **GRANTED**.

## B.  Motion to Transfer Venue

In the alternative, both Defendants argue that for the convenience of the parties, the Court should transfer the case to the Western District of Virginia, because some witnesses and material evidence are located there, and the law of Virginia applies. Plaintiffs urge this Court to retain jurisdiction due, primarily, to arguments pertaining to personal inconvenience.

### 1.  Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts "have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). The moving party bears the burden of proving that a

venue change is appropriate. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002). Parties do not contest that venue would be proper in the Western District of Virginia, the district where the accident took place.

In deciding whether to transfer venue, the district court must "weigh a number of case-specific factors, such as the convenience of parties and witnesses, 'public interest factors of systemic integrity,' and private concerns falling under the heading 'the interest of justice.' " *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 537-38 (6th Cir.2002); *see also Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *Siegler v. City of Columbus*, No. 2:12-CV-00472, 2014 WL 1096159, at *2 (S.D. Ohio Mar. 19, 2014) (Marbley, J) (balancing private and public factors); *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013) (same); *Slate Rock Const. Co. v. Admiral Ins. Co.*, No. 2:10-CV-1031, 2011 WL 3841691, at *6 (S.D. Ohio Aug. 30, 2011) (Marbley, J) (same, citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878 (3d Cir.1995)). "These requirements derive from the language of the transfer statute." *Phelps v. United States*, No. 1:07CV02738, 2008 WL 5705574, at *2 (N.D. Ohio Feb. 19, 2008).

In its case-by-case analysis under § 1404(a), this Court balances the following private and public factors protected by the language of Section 1404(a):[3]

---

[3] Parties rely on cases which enumerate similar, but not identical, public and private factors to consider under Section 1404(a). Defendants cite to *Reese*, 574 F.3d at 320 (holding that the Court should consider a number of factors when deciding on a Section 1404(a) motion, including: 'the convenience of the parties and witnesses,' the accessibility of evidence, 'the availability of process' to make reluctant witnesses testify, 'the costs of obtaining willing witnesses,' 'the practical problems of trying the case most expeditiously and inexpensively' and 'the interests of justice.'"); and, Plaintiffs cite to *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991) ("Among the factors to be considered are the nature of the suit; the place of the events involved; the relative ease of access to sources of proof; the nature and materiality of testimony to be elicited from witnesses who must be transported; the respective courts' familiarity with applicable law and the condition of their dockets; and the residences of the parties."). This Court's and the parties' tests all encompass an interpretation of "convenience of the parties and witnesses" and the "interests of justice," and thus their nuanced differences are not significant to the analysis.

The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Slate Rock*, 2011 WL 3841691, at *6 (citing *Jumara,* 55 F.3d at 879–80 (internal citations omitted)); *Sabol v. Ford Motor Co.*, No. 2:14-CV-543, 2014 WL 6603358, at *4 (S.D. Ohio Nov. 19, 2014) (applying public and private factors analysis). "No one factor is dispositive; rather transfer is appropriate if the balance of these factors weighs 'strongly' in favor of transfer." *U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co*, No. 5:10CV383, 2011 WL 127852, at *2 (N.D. Ohio Jan. 14, 2011) (citations and quotations omitted). In addition, a Court does not need to discuss extensively each of the factors, "but should instead focus its analysis on those factors that are particularly relevant to a given transfer determination." *Id*.

Under the circumstances, the factors Defendants highlight do not justify transfer.

## 2. Analysis

### a. Private Factors

#### i. Plaintiff's and Defendant's forum preference

While the general rule is that the "inconvenience of the chosen and proposed forums must be balanced to see which party would suffer the greater hardship if a change of venue is granted," *Centerville,*197 F. Supp. 2d at 1049, this Circuit has made clear that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

disturbed." *Reese*, 574 F.3d at 320; *see also Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993) ("What is clear, at least in this Circuit, is that for a court to properly grant transfer the balance of all relevant factors must weight "strongly in favor of transfer."). That being said, "'[w]hen the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise.'" *Sabol*, 2014 WL 6603358, at *5 (quoting *DRFP, LLC,* 945 F.Supp.2d at 902-03, and finding transfer was proper where plaintiff did not reside in the district, plaintiff represented a nationwide class, and none of the events giving rise to her claim took place in Ohio).

Plaintiffs have chosen to litigate this case in their home state of Ohio, and that choice is given substantial deference. *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U .S. 518, 524 (1947) (finding that when a United States resident brings suit in his home forum, that choice is entitled to great deference); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 n.23 (1981). The reason deference is given "to a plaintiff's choice of her home forum is because it is presumed to be convenient." *Reyno,* 454 U.S. at 256. Less deference, however, is accorded the choice of a United States forum by a foreign plaintiff. *Id.* at 255–56 (holding that "[w]hen the plaintiff is foreign ... th[e] assumption [favoring the plaintiff's choice of forum] is much less reasonable"). Here, Day to Day is a Canadian corporation, and its choice of forum is afforded less deference. It is true, however, that Schneider is not a foreign corporation, and so this consideration is balanced evenly between the Defendants.

While the claim arose elsewhere, however, this Court already has determined that it has jurisdiction over this case, in part due to the policy implications of the service of process provision of the Federal Motor Carriers Act. This Court interpreted FMCA, *supra*, and determined that the statute addresses the safety and liability risks of motor carriers' interstate

travel, and enables access to the courts for those injured during interstate travel by motor carriers

engaged in interstate commerce.  Accordingly, Plaintiffs' preference to litigate this case in Ohio,

where they reside and receive medical treatment, substantially outweighs Defendants' preference

to transfer to Virginia. The fact that the accident occurred in Virginia, therefore, does not

diminish substantially the great weight normally afforded to a plaintiff's preference.

### ii. Convenience of the Parties as Indicated by their Relative Physical and Financial Condition

This factor weighs heavily against transfer of venue. As Plaintiffs argue, Mrs. Grubb has

difficulties traveling due to the serious neck injury that she suffered in the collision. She no

longer drives and flying presents similar physical problems. Darlene Grubb was working a part

time job before the accident, but she in now in her late 60s and unemployed. She identifies

herself as "working class." In contrast, Defendants are national and multinational companies

whose costs are being paid by insurers. Further, the plaintiff in the related case, Mr. Parrott, is

also an Ohio resident.

In addition, Virginia is no more a convenient forum for Schneider and Day to Day than

Ohio. In fact, Ohio is closer to both companies' principal places of business. Section 1404(a)

provides for transfer "to a more convenient forum, not to a forum likely to prove equally

convenient or inconvenient."  *B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 946 (W.D.

Tenn. 2013) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945

(1964)). Thus, this factor weighs strongly against transfer of venue.

### iv. The Convenience of the Witnesses-But Only to the Extent that the Witnesses May Actually Be Unavailable for Trial in One of the Fora; and, Access to Evidence

Defendants argue that liability is contested, and that several key fact witnesses who are

beyond this Court's subpoena power are located in Virginia, including: The Virginia State

Troopers who investigated the accident, the EMS personnel, and tow truck operators. Defendants also contends that to the extent that it is necessary to view the location of the accident, it will be inconvenient to do so if the suit remains in this district. Defendants add that the other key eye witnesses—drivers of both trucks—are not located in Virginia or Ohio, and likely cannot be compelled to either venue, thereby increasing the importance of compelling the presence of the Virginia-based witnesses.

Plaintiffs respond that Defendants have failed to meet their burden of proof of showing the materiality of out-of-state witnesses, or the inconvenience to them in traveling to Ohio. This Court agrees.

A change of venue is improper if it "serves merely to shift the inconvenience from the defendants to the plaintiff." *Slate Rock*, 2011 WL 3841691, at *9.

> Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue. Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district, and must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in that forum.

*Id.* (citations and quotations omitted).

Courts in this Circuit have held consistently that Defendants bear a factual burden to show that witnesses are unwilling to attend trial; they must produce "evidence regarding precise details of the inconvenience" to the potential witnesses, as well as "show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." *B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 944 (W.D. Tenn. 2013) (internal citations and quotations omitted). Moreover,

> [t]o sustain a finding on [witness inconvenience] ... the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient

30

> details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience.' It is the 'materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses,' that is crucial to this inquiry.

*Id.* (internal citations and quotations omitted).

Neither Defendant has demonstrated to this Court any specific hardship in transporting any documents from Virginia, nor proffered affidavit testimony with sufficient detail respecting Virginia witnesses and their potential testimony to enable this Court to assess the materiality of and inconvenience to those witnesses. While this Court can opine that it may be difficult to compel the attendance of Virginia troopers, EMS individuals, and tow-truck drivers, this contention is factually unsupported. While "the limitation of this Court's subpoena power, *see* Fed.R.Civ.P. 45(e), is an important consideration, … at this point defendant has not shown a need to present the live testimony of any particular witness, or that any of the witnesses in question would not voluntarily appear at trial in this Court." *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991). Accordingly, like in *Kimball*, this argument is unpersuasive. Further, these witnesses could be available for depositions if unwilling to testify in this district, and while their testimony would "not be live and therefore could be less persuasive," *B.E. Tech,* 957 F. Supp. 2d at 947, the identified Virginia witnesses were not eye-witnesses to the accident, and they are all impartial third parties who have no vested interests in the outcome of this case. Thus, an assessment of their credibility would be less essential to a just outcome.

In addition, as Plaintiffs argue, Defendants have failed to support the materiality of such witnesses with affidavit testimony. Regarding the Troopers, as Plaintiffs argue, their testimony is of little weight because most of the information they obtained regarding the accident would be inadmissible hearsay, and their investigation detailed in a police report was limited and without

much follow-up. In terms of the EMS witnesses, as Plaintiffs argue, they are far less important than treating physicians who are in North Carolina and Ohio, with the vast majority in Ohio. In addition, Plaintiffs put forth that neither Defendant has substantiated the purpose of calling tow-truck drivers as witnesses, as the vehicles were photographed and the tractor-trailers have been inspected and are no longer in the possession of the police or tow-truck companies.

Schneider depends on a single case, *Phelps v. United States*, in which the plaintiff was an Ohio resident involved in an automobile accident in Michigan, and the court found the inconvenience to the defendant's witnesses and access to the accident scene weighed heavily in favor of transfer. No. 1:07CV02738, 2008 WL 5705574, at *2-3 (N.D. Ohio Feb. 19, 2008). Specifically, the Court held that Michigan was a more convenient venue given the overwhelming number of "percipient fact witnesses" located there (thirty-five, five times as many as plaintiff's estimate of Ohio-based witnesses), the contested liability, and the fact that so many of the witnesses were emergency personnel. *Id*. at *3. The *Phelps* Court reasoned further that the numerical disparity in the domicile of witnesses was exacerbated by the fact that the majority of defendant's fact witnesses were Michigan-based emergency personnel, and travel to Ohio would be an extreme hardship not only for them, but also for the communities they served. *Id.*

*Phelps* is distinguishable in three crucial aspects. First, unlike in the case *sub judice*, it does not appear that the plaintiff in *Phelps* and plaintiff's key witnesses were unable physically to travel. Second, unlike in *Phelps*, where the Court found compelling public hardship in calling away to testify a large number of emergency personnel, in this case Defendants have not indicated that a large number of Virginia State Troopers would be called to Ohio to testify. Instead, they allude only to calling the Trooper who produced the police report. Regardless, as stated above, Defendants have not met their burden of proof regarding the number, identities, or

materiality of testimony of Virginia State Trooper witnesses, nor details regarding inconvenience to them in testifying in this venue. Finally, unlike in this case, where neither Ohio nor Virginia is a more convenient forum for either Defendant, in *Phelps*, the Court determined that the venue where the accident occurred was more convenient to the defendant himself.

This case is more similar to *Falzon*, which found that the New York Court had jurisdiction under *Ocepek*, even though the automobile accident took place in Indiana, and also that a transfer of venue to Indiana was inappropriate. *Falzon v. Johnson*, No. 12 CV 0674 ILG, 2012 WL 4801558, at *1 (E.D.N.Y. Sept. 11, 2012) *report and recommendation adopted,* No. 12 CV 674 ILG CLP, 2012 WL 4798670 (E.D.N.Y. Oct. 9, 2012). The defendants in *Falzon* made the following arguments regarding why access both to proof and witnesses would be more convenient in the venue where the accident occurred, which are identical to arguments the Defendants make in this case: (1) it would have proven useful to have the jury visit the accident scene; (2) documents were located there; (3) key witnesses beyond the court's subpoena power were located there; (4) and convenience to the witnesses, including to the defendant, medical personnel, and eyewitnesses in the police reports, weighed in favor of transfer. *Id*. at *9-12.

Taking the arguments in turn, the *Falzon* Court rejected each, and this Court adopts the *Falzon* Court's rationale as to each argument: (1) defendants failed to meet their burden of explaining why photographs would not equally suffice, or that it was actually practical for the jury to travel from the courthouse to the scene of the accident; (2) defendants did not show that documents were voluminous and could not be transferred easily; (3) given the number of witnesses who resided in neither state, and the equal footing of the district courts in both states with respect to their ability to compel witnesses to testify, the Court found that argument inconsequential; and (4) defendants failed to support their claims of eyewitness inconvenience

33

and materiality with proof, the responding officer was less material because he was not an eyewitness, and the medical providers in the state where the accident occurred were less consequential because Plaintiff received only emergency care there. *Id*.

Further, like in this case, in *Falzon* the Plaintiff had both physical and financial limitations as a result of the accident that made it difficult for her to travel, and she had a number a witnesses for whom it would be very inconvenient to travel, including her mother. *Id*. at *13. In *Falzon*, the Court found dispositive that "plaintiff would be forced to pay the expenses of her medical witnesses and experts, as well as her non-party witnesses, to travel to Indiana," which she was unable to do, largely as a result of the accident. *Id*. In addition, the Court found particularly persuasive that plaintiff would suffer physical pain, due to the injuries she sustained in the accident, if forced to travel by car or plane. *Id*. Mrs. Grubb makes all of the same contentions: she is both physically and financially unable to travel due to the accident, she has a large number of treating physicians in Ohio for whom she likely would not be able to afford travel, and a key eyewitness to the accident, Ms. Bartlett, is 87-years-old and unable to travel. This Court similarly finds that these considerations weigh heavily against transfer.

Finally, like the *Falzon* Court, this Court is not persuaded by Defendants' argument that it is important to try the case in Virginia where at least some key witnesses are within the court's subpoena power, because the drivers of both the Day to Day vehicle and the Schneider vehicle are the only other key witnesses, and cannot be compelled to testify in either jurisdiction because they they are not from Ohio or Virginia. This court adopts the rationale in *Falzon*, where the Court rejected defendant's argument that its employees could not be compelled to New York, and held, instead, that "apart from failing to submit supporting affidavits regarding the nature of their expected testimony, plaintiff claims, and this Court previously has held, that the

34

convenience of defendants' employees is not relevant because employees will 'be available in any venue by virtue of the employment relationship.'" *Id*. at *13. Defendants in this case have not supported with affidavit testimony their contention that their employees will not attend a hearing in Ohio, and this Court assumes that as the drivers' employers, Defendants are well positioned to compel their testimony.

Finally, this Court notes that while none of the other potential eyewitnesses to the accident lives in Ohio or Virginia, Mr. Parrott, another potential witness to the accident, is a resident of Ohio.

In sum, having considered the parties arguments pertaining to convenience, including access to evidence and witnesses, this Court finds, first, that Defendants have failed to meet their evidentiary burden to show material witnesses could not be compelled to testify in Ohio; second, this Court finds that Plaintiffs would experience greater hardship in regard to this factor if forced to transfer venue. Unless it can be said that, balancing all appropriate factors, plaintiff's choice of a forum is "clearly ... inconvenient," a change of venue should not be ordered. *Slate Rock*, 2011 WL 3841691, at *9. Defendants have not met this burden regarding the private factors, suggesting that transferring venue is unnecessary in this case. This does not end the inquiry, however, because the Court must also consider and balance the public factors at stake.

### b.  Public Factors

Pertaining to the public factors, Defendants argue that Virginia is the proper venue because Virginia has a significant interest in regulating tortious conduct that occurs within its territory, and the Virginia court's familiarity with Virginia law weighs in favor of transfer to the Western District of Virginia.

35

This Court has already found that Virginia law applies to the case *sub judice*, and thus Virginia's interest in regulating tortious conduct that occurs in its district is satisfied largely by application of Virginia law. Ohio, arguably, has a greater overall interest in resolving this controversy, however, as its citizens will be affected, whereas none of Virginia's residents are involved in the instant controversy.  *See, e.g.*, *Slate Rock* at *10 (finding both venues "have an interest in the outcome of this litigation because citizens of both states will be affected"). Further, both the Southern District of Ohio and the Western District of Virginia can enforce a judgment against Defendants.

Defendants curiously rely on *Midwest Motor Supply Co. v. Kimball* for support, a case that examined whether transfer to Georgia was appropriate even though the contract at issue had a choice-of-law provision mandating application of Ohio law.  761 F. Supp. 1316 (S.D. Ohio 1991). Although the *Kimball* Court noted that "[i]t is generally recognized that 'a diversity case should be decided by a court which is most conversant with the applicable state law," it found that transfer to Georgia was appropriate because a covenant not to compete "[did] not appear to present any novel or complex issues under Ohio law." *Id*. at 1319. Similarly, in *Phelps*, the Court reasoned that although "[d]enial of transfer would require this Court, sitting in Ohio, to apply Michigan law," the weight of that factor was diminished because "to the extent this case will require interpretation of Michigan law, that law is not likely to be exceedingly complicated. This Court certainly is familiar with principles of negligence law, and neither party asserts that the applicable Michigan law is unique in this regard." 2008 WL 5705574 at *4. As in *Kimball* and *Phelps*, this Court finds that even though denial of transfer will require this Court, sitting in Ohio, to apply Virginia law, such a factor is not significant as this Court is certainly familiar with principles of negligence law. Further, Defendants do no contend applicable Virginia law is

36

unique or difficult. Defendants cited some variances in Virginia law, above, which this Court already has addressed.

Finally, Defendants argue are disparities in court congestion weigh in favor of transfer to Virginia. Day to Day cites to the Federal Judicial Caseload Statistics for 2014, which state that the Western District of Virginia has experienced a 5.7% decrease in the number of filings, whereas the Southern District of Ohio has experienced a 2.1% increase. Further, as of March 31, 2014, the Western District of Virginia had 709 cases pending, while the Southern District of Ohio had 2,677 cases pending. Schneider cites to December 2013 statistics which show that Judges in the Western District of Virginia had 305 civil cases on their dockets, while Judges in the Southern District of Ohio had 333 cases.

First, Day to Day's citation to disparities in the number of cases pending in 2014 are misleading somewhat, as the Western District of Virginia has far fewer judges than the Southern District of Ohio. Regardless, while the Court acknowledges some disparities in court congestion exist, they are not so significant as singlehandedly to tip this Court in favor of transfer.

On balance, therefore, neither the private nor public factors weigh in favor of transfer to the Western District of Virginia. Accordingly, Defendants' motions for transfer are hereby **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, Day to Day's Motion to Dismiss for Lack of Jurisdiction, or, in the Alternative, to Transfer Venue to the Western District of Virginia is **DENIED**; Day to Day's request to dismiss Plaintiffs' claims for negligent supervision and training, however, is **GRANTED**. (Doc. 12). Additionally, Day to Day's Motion to Dismiss the Cross Claim, or in the Alternative Transfer Venue to the Western District of Virginia is **DENIED**. (Doc. 18). Finally,

Schneider's  Motion to Transfer Venue to the Western District of Virginia is **DENIED**. (Doc. 20).

      **IT IS SO ORDERED.**

                                     **s/Algenon L. Marbley_____**
                                     **Algenon L. Marbley**
                                     **United States District Court Judge**

**DATE: July 2, 2015**